VERDEV, Respondent, v. DEPARTMENT OF REVENUE, Appellant.

*No. 147.  Argued January 3, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 641.)

586

For the appellant the cause was argued by *E. Weston Wood*, assistant attorney general, with whom on the briefs was *Robert W. Warren*, attorney general.

For the respondent there was a brief by *Godfrey & Kahn, S. C.,* attorneys, and *John M. Byers, James Ward*

*Rector, Jr.,* and *James Ward Rector* of counsel, all of Milwaukee, and oral argument by *James Ward Rector, Jr.*

ROBERT W. HANSEN, J. "If you would argue with me," said Voltaire, "define your terms." In reviewing an unreported income case involving the net worth approach, it is well to begin with an explanation of what the net worth approach involves. Fortunately, a concise definition of the concept is available:

"In a typical net worth prosecution, the Government, having concluded that the taxpayer's records are inadequate as a basis for determining income tax liability, attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. . . ." [1]

The high court decision, from which the above explanation is excerpted, finds proper the use of the net worth concept,[2] but notes its hazards [3] and urges court

---

[1] *Holland v. United States* (1954), 348 U. S. 121, 125, 75 Sup. Ct. 127, 99 L. Ed. 150.

[2] ". . . the net worth approach—a powerful method of proving otherwise undetectable offenses—should not be denied the Government . . . ." *Id.* at page 135.

[3] ". . . its use in the ordinary income-bracket cases greatly increases the chances for error. This leads us to point out the dangers that must be consciously kept in mind in order to assure adequate appraisal of the specific facts in individual cases." *Id.* at page 127.

caution in its application to a specific situation.[4] Specifically, the decision points up the difficulties involved in establishing a "definite opening net worth," [5] particularly where the taxpayer claims to have had "substantial cash on hand at the starting point." [6] That is the only issue in the case before us: How much cash did the taxpayer have at the start of the audit period? As to other issues raised, the trial court held that ". . . the merits of these issues cannot be judicially determined unless and until a failure to report income is proven." It is the net worth of the taxpayer, particularly as to cash on hand at the beginning of the audit period, that is the basis of the dispute between taxpayer and tax department.

Establishing a definite opening net worth, particularly in the area of cash assets, is difficult, but it is a prerequisite to the use of the net worth approach.[7] Here the state, basing its estimate on tax returns for earlier years, began with an estimate of $3,000 in cash in possession of the taxpayer at the beginning of the audit period. This was based primarily upon earlier tax returns filed by the taxpayer and his wife for the years 1937 to 1945. (The taxpayer had filed no returns

[4] ". . . it is so fraught with danger for the innocent that the courts must closely scrutinize its use." *Id.* at page 125.

[5] *Id.* at page 132.

[6] ". . . Among the defenses often asserted is the taxpayer's claim that the net worth increase shown by the Government's statement is in reality not an increase at all because of the existence of substantial cash on hand at the starting point. . . ." *Id.* at page 127.

[7] ". . . an essential condition in cases of this type is the establishment, with reasonable certainty, of an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets. The importance of accuracy in this figure is immediately apparent, as the correctness of the result depends entirely upon the inclusion in this sum of all assets on hand at the outset. . . ." *Id.* at page 132.

for years prior to 1937 although he had some income in such earlier years.) We find entirely reasonable and appropriate such use of an initial estimate, so based, provided that the taxpayer is given the opportunity to dispute the estimate and offer proof that he in fact possessed greater cash assets at the start of the audit period. That opportunity to contest and offer proof was here given to the taxpayer. He testified that he had, at the least, $12,000 on hand in a wall safe at the beginning of the audit period. He introduced exhibits indicating the purchase early in the audit period, of a truck, a dozer-shovel, a tilt-top trailer and a bucket loader. His testimony was that he thus spent over $12,000 in cash in 1946 before he had significant income during such year, and that this $12,000 could only have come from cash he had on hand. The tax appeals commission found that the taxpayer had $3,000 in cash assets at the beginning of the audit period. If this were all there was to consider, nothing would remain except to determine whether the evidence at the hearing sustained a finding of fact made by a trier of fact, and the measure of proof required would be the same as for similar fact findings by similar administrative agencies.[8]

However, there is a clinker in this grate. The tax appeals commission did not consider and evaluate all of

---

[8] Sec. 227.20, Stats., provides in part:

". . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

". . .

"(d) Unsupported by substantial evidence in view of the entire record as submitted; . . ."

"The question . . . is whether, upon the entire record, the evidence is such that a 'reasonable man, acting reasonably, *might* have reached the decision' . . ." *Columbus Milk Producers v. Department of Agriculture* (1970), 48 Wis. 2d 451, 459, 180 N. W. 2d 617.

*See also: Copland v. Department of Taxation* (1962), 16 Wis. 2d 543, 554, 114 N. W. 2d 858.

the testimony before it, certainly not that offered by the taxpayer. Instead, it elected to reject as improper the testimony and defense of the taxpayer. This it did by holding:

". . . The amount of cash on hand [at the beginning of the audit period] could not have exceeded the $3,000 for which petitioner was given credit in the audit report, unless the petitioner had accumulated a larger sum in previous years and had failed to report it for income tax purposes. In the instant case as in numerous other double rate net worth cases, the hoard of cash device was used by the petitioner to explain the source of cash out of which he purchased tangible assets after December 31, 1945. Such device must be rejected on the basis of the record. If accepted, the device would permit the petitioner to cut down income he received during the audit period by previously unreported income."

The tax appeals commission did not find the testimony of the taxpayer inaccurate or incredible. It termed the defense of additional cash on hand as the "hoard of cash device," and held that, as such, it could be given no weight or substance. That goes too far. The commission was not required to accept the testimony of the defendant. Questions of credibility, conflict in testimony, differing inferences reasonably drawn from a record are for the trier of fact to resolve. But it was not entitled to label all defenses of this type in all cases as "devices" to be summarily rejected and disregarded. In the *Holland Case*, to which extensive reference has been made, the defendant in a criminal tax prosecution claimed to have earlier accumulated over one hundred thousand dollars in cash, kept variously in a canvas bag, a suitcase and a metal box. The government did not introduce any direct evidence to dispute this claim. Rather, it relied on the inference that anyone who had that much cash would not have lived as the petitioners had or undergone the hardships they endured in the years involved. Even though *Holland* was a criminal prosecution, the United States Supreme

Court held that the ". . . Government's evidence fully justified the jury's conclusion that there were no proceeds over and above the amount credited to petitioners." [9]

In the case before us, as in *Holland,* we deal with what was there termed the "favorite defense" that ". . . asserts that the cache [of extra cash] is made up of many years' savings which for various reasons were hidden and not expended until the prosecution [here audit] period. . . ." [10] It is obvious that there are difficulties, under the net worth approach, for the state in countering such hidden hoard claim. [11] But, as the *Holland Case* itself demonstrates, there are difficulties involved for the taxpayer in establishing such claim of concealed cash resources. [12] In any event, the issue, where such claim is made, is one of fact to be resolved on an individual basis in each individual case where the net worth approach is used. The defense is not to be swept aside by a blanket holding that it cannot be raised or considered. The initial estimate as to cash on hand at the beginning of the audit period, based on prior tax returns, here created a presumption, but a rebuttable one. Whether proof offered by the taxpayer rebutted such presumption and made a higher figure as to cash on hand a more proper starting point from which to apply the net worth test is for the trier of fact, here the tax appeals commission, to decide. However, evidence offered by the taxpayer as to having more cash on hand at the beginning of the audit period than the state estimated, must be considered, even though such

[9] *Holland v. United States, supra,* at page 135.

[10] *Id.* at page 127.

[11] ". . . Obviously, the Government has great difficulty in refuting such a contention. . . ." *Id.* at page 127.

[12] ". . . However, taxpayers too encounter many obstacles in convincing the jury of the existence of such hoards. . . ." *Id.* at page 127.

evidence may not always be believed or found sufficient to make unreasonable the estimate as to opening net worth as made by the tax department.

The error of the tax appeals commission in refusing to consider the testimony offered by the taxpayer as to the proper starting point for use of the net worth test requires reversal. The trial court reversed and set aside the order of the commission and remanded the case to the commission for a new hearing to determine whether or not there was here a failure to report taxable income. That was the indicated and required disposition of the case.

*By the Court.*—Judgment affirmed.